FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 22 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

Henry Curry,

            Defendant.

15-CR-382

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

JACK B. WEINSTEIN, Senior United States District Judge:

**Appearances**

**For United States:**

    Marcia Maria Henry
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-6393
    marcia.henry@usdoj.gov

    Michael P. Robotti
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-7576
    michael.robotti@usdoj.gov

**For Defendant:**

    Matthew J. Kluger
    895 Concourse Village West
    Bronx, NY 10451
    718-293-4900
    EDNYkluger@aol.com

Table of Contents

I.   Introduction ............................................................................................................1
   A. Instant Offense ....................................................................................................1
   B. Arrest ..................................................................................................................2
   C. Guilty Plea ..........................................................................................................2
   D. Sentencing Hearing .............................................................................................3
II.  Offense Level, Category, and Sentencing Guidelines Range .................................3
III. Law .......................................................................................................................4
IV.  18 U.S.C. § 3553(a) Considerations .....................................................................5
V.   Sentence ...............................................................................................................7
VI.  Conclusion ...........................................................................................................7

## I. Introduction

Defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin pursuant to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). *See* Guilty Plea Transcript, July 28, 2016, ECF No. 349 ("Pleading Tr."), at 19. He participated in a drug trafficking organization ("DTO") to distribute heroin in Queens, New York. Ten other defendants are currently awaiting trial or sentencing and one other defendant has been sentenced in the above-captioned case.

On February 6, 2017, he was sentenced to time served of 10 months, supervised release for 3 years, and a $100 special assessment. *See* Sentencing Hr'g Tr., Feb. 6, 2017 ("Sent. Hr'g").

### A. Instant Offense

He is a twenty-eight year-old African American male, born in Queens, New York. Presentence Investigation Report, Nov. 22, 2016 ("PSR") at 2. An investigation commenced by Homeland Security Investigation ("HSI") and other law enforcement agencies in 2013 revealed that Mr. Curry, together with Kamel Lambus, Stanley Fuller, Shavona Trappier, Shakeem Powell, Sean Brabram, Scott Williams, Tyrone Thomas, Andre Mitchell, Earl Davis, Michael Scott, and Tyran Trotter ("defendants"), was participating in a street gang called Paper Chasing

Goons. PSR at ¶ 3. Ten of the eleven remaining defendants are currently awaiting trial or sentencing. *Id.* at 3. The investigation revealed that the DTO maintained access to narcotics and firearms; some of its members distributed heroin to a network of drug traffickers who then sold it to customers. *Id.* at ¶¶ 3-4. Defendants sold heroin from several stash houses, and during the course of the investigation, it was determined that a mobile telephone was used to distribute heroin to the DTO's customers. *Id.* at ¶¶ 4-5.

On April 20, 2015, Mr. Curry arranged during a monitored telephone call to purchase one gram of heroin from a conspirator, one Kamel Lambus. *Id.* at ¶ 9. On May 15, 2015, during another monitored phone call, Mr. Curry and Mr. Lambus discussed Mr. Curry's efforts to increase the amount of heroin he was distributing for the DTO. *Id.* at ¶ 10. Mr. Curry informed Mr. Lambus that he was having difficulty selling heroin on the street, and Mr. Lambus advised Mr. Curry as to how he could increase his sales. *Id.*

**B.  Arrest**

Defendant was arrested by HSI agents on October 5, 2015, at the New York County Criminal Court in Manhattan, New York, while in local custody for an unrelated offense. *Id.* at ¶ 8. He was released on a personal recognizance bond on October 22, 2015. For violations of bail conditions, he was remanded on May 5, 2016 and has remained incarcerated since that date. *Id.* at 1.

**C.  Guilty Plea**

In July, Mr. Curry pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin pursuant to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). *See* Pleading Tr. at 19. The offense carried a maximum term of imprisonment of 20 years. 21 U.S.C. § 841(b)(1)(C). A special assessment of $100 was mandatory. 18 U.S.C. § 3013. The

statutory provisions and Sentencing Guidelines ("Guidelines") impose a mandatory term of supervised release of three years. 21 U.S.C. § 841(b)(1)(C); U.S.S.G. § 5D1.2(c).

**D.** **Sentencing Hearing**

A sentencing hearing was conducted on February 6, 2017. *See* Sent. Hr'g. The hearing was videotaped to develop an accurate record of the courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264–65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

**II.** **Offense Level, Category, and Sentencing Guidelines Range**

Defendant's base offense level is 30, with a criminal history category of IV. *See* PSR at ¶¶ 51, 68-70. The offense level was decreased by three points pursuant to U.S.S.G. § 3E.1.1(a)-(b) for defendant's acceptance of responsibility. PSR at ¶¶ 58-60. The total adjusted offense level is 27. *Id.* at ¶ 60. The parties do not object to this calculation. *See* Sent. Hr'g. The Guidelines imprisonment range is 100 to 125 months. *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 107.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from them in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (footnote omitted) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

3

## III. Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

4

## IV. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Mr. Curry was born in 1988 in Queens. PSR at ¶ 76. His parents separated in 1994 or 1995. *Id.* Defendant resided with his mother and siblings in the family home until 1999, when he moved in with his father in Queens. *Id.* at ¶ 87. His father is a retired hospital worker, and when defendant was 17 or 18, his father left New York and moved to the South of the United States. *Id.*; Sent. Hr'g. Defendant's mother works as a home health aide and resides in Maryland. *Id.* at ¶ 76. Both of his parents are aware of defendant's conviction and are supportive. *Id.*

Defendant has three full-siblings. *Id.* at ¶ 77. His oldest sister is a hospital worker and resides in Georgia with her husband and three children. *Id.* Another sister resides in Brooklyn, and her occupation is unknown. *Id.* His third sister resides in Queens with her husband and two children and works at an airport. *Id.* Defendant also has five maternal half-siblings, all of whom are employed. *Id.* at ¶ 78. His siblings are aware of his conviction and are supportive. *Id.*

Mr. Curry has five children. He has two children from a previous relationship. *Id.* at ¶ 81. These children are 7 and 5 years old and live with their mother. *Id.* Defendant describes his relationship with the children and their mother as very good. *Id.* He does not provide her with child support payments. *Id.* at ¶ 82.

Mr. Curry also has a daughter from a previous relationship. *Id.* at ¶ 83. She is 7 years old and resides with her mother. *Id.* Defendant has a good relationship with his daughter and the mother, and has provided the mother with child support payments as needed since their daughter's birth. *Id.*

5

Since approximately 2007, defendant has been in a relationship with his current girlfriend. *Id.* at ¶ 85. They have two children together, who are ages 5 and 3. *Id.* Defendant's girlfriend experienced difficulty supporting herself and her children financially while defendant was in custody. *Id.*

Prior to his arrest, defendant was employed as a ticket salesman at the Statue of Liberty, making a commission of up to $200 per day. *Id.* at ¶ 99; Sent. Hr'g. His sister testified at the sentencing hearing that when she learned of her brother's involvement in the DTO, she assisted him in finding this job. Sent. Hr'g. With his sister's encouragement, defendant left Queens – the neighborhood in which he was living and selling heroin – and moved in with her. *Id.* He began distancing himself from the DTO, stopped selling heroin, and obtained employment several months before he was arrested. *Id.* His sister testified that she will continue to house and support defendant following his release. *Id.*

Defendant did not hold steady employment prior to his job selling tickets at the Statue of Liberty, and was unemployed for several periods of time. PSR at ¶¶ 98-103. Defendant left high school after completing the eleventh grade; he began working towards earning a General Education Development diploma while incarcerated. *Id.* at ¶ 97; Sent. Hr'g.

Mr. Curry has experienced severe problems in custody. Sent. Hr'g. Likely because other inmates believed defendant to be an informant, he was attacked on multiple occasions during his incarceration. *Id.*

He currently does not use drugs or alcohol. PSR at ¶ 94; Sent. Hr'g. Beginning at the age of 18, he began to use marijuana; he smoked up to two blunts per day at the height of his marijuana use. *Id.* While he was released on bail for the instant offense, he tested positive for

6

marijuana on five occasions. *Id.* at ¶ 95. Prior to his current offense, defendant had five misdemeanor convictions and one violation. *Id.* at ¶¶ 62-67.

Mr. Curry's involvement in the DTO involved no use of firearms or supervision of others. *Id.* at ¶ 10. He has repeatedly accepted responsibility for his offenses. *Id.* at ¶¶ 58-59; Sent. Hr'g.

## V. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of the offense and the characteristics of the defendant, Mr. Curry is sentenced to time-served of 10 months. *See* Sent. Hr'g. A $100 special assessment was imposed. 18 U.S.C. § 3013. No fine was imposed in light of the defendant's inability to pay one. *See* Sent. Hr'g; PSR at ¶ 104. Three years supervised release was ordered. *See* Sent. Hr'g.

General and specific deterrence are achieved by the sentence imposed. Mr. Curry pled guilty to a serious offense. He has expressed genuine remorse for his conduct and understands the gravity of his actions.

## VI. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein  
Senior United States District Judge

Dated: February 8, 2017  
      Brooklyn, New York